# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ALEX RYLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N23C-02-192 CEB |
| | ) | |
| Correctional Officer OUTEN, Lt. | ) | |
| Veronica TILGHMAN, Sgt. Matthew | ) | |
| DUTTON, Sgt. BURLEY, Major | ) | |
| Jason SCHAFFER, Bureau Chief | ) | |
| Shane TROXLER, | ) | |
| | ) | |
| Defendants. | ) | |

Date Submitted: August 29, 2023
Date Decided: January 5, 2024

## MEMORANDUM OPINION

*On Defendants' Motion to Dismiss Plaintiff's*
*Amended Complaint*-**GRANTED**

Alex Ryle, James T. Vaughn Correctional Center, 1181 Paddock Road, Smyrna, Delaware, *Pro Se.*

Robert Kleiner, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for Defendant's.

**BUTLER, R.J.**

1

## INTRODUCTION

Alex Ryle is an inmate at the James T. Vaughn Correctional Center ("JTVCC"). He has two complaints concerning separate incidents while incarcerated, both of them joined in this single lawsuit, which seeks damages and other more esoteric relief.[1] The Defendants have moved to dismiss, arguing that the Plaintiff is not entitled to the relief he seeks. The Court finds that the damages sought are not available under these pleadings and the more esoteric relief is not available in this Court.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. First Complaint - Correctional Officer Outen's Treatment of Ryle

Ryle explains in his complaint that he is studying for a paralegal certificate.[2] He says that as part of that field of study, he was supposed to apply for a private investigator's license from the State Police.[3] Ryle says he did so and was expecting the application materials from the State Police.[4] Then one day Correctional Officer Outen – who is somehow connected with the mail delivery system at the JTVCC –

---

[1] Amend. Compl., Jul. 20, 2023.
[2] *Id*. ¶ 11.
[3] *Id*. ¶ 12.
[4] *Id*.

spoke to Ryle, allegedly in the presence of other inmates.[5]  Ryle says that Outen told him that a piece of suspicious mail addressed to him had been found in the mail room, that it appeared to be from a police agency, and it had been rejected and returned.[6]

In fact, the very next day, an envelope containing the said private investigator license application was delivered to him through the prison mail system.[7]

But Ryle did not appreciate Outen's revelation that he had received mail from a police department in front of other inmates.  He so didn't appreciate it that he filed an inmate grievance through the Department of Corrections ("DOC") internal grievance procedure.[8]  When that did not yield a result suitable to Ryle, he filed this complaint for damages.

### B. Second Complaint - Ryle not Receiving a Postal Return Receipt

When Ryle filed the complaint concerning Outen's revelation in this Court, he did so by written complaint and related praecipe and service forms, all in an envelope via prison mail.[9]  He paid for, and had the envelope marked "certified mail, return receipt requested."[10]  The complaint was timely delivered to the Superior

---

[5] *Id*. ¶ 13.
[6] *Id*.
[7] Amend. Compl. ¶¶ 13, 14.
[8] *Id*. ¶ 18.
[9] *Id*. ¶ 29.
[10] *Id*. ¶ 30.

Court Prothonotary and duly clocked in. But Ryle grew concerned that he had not received the green "return receipt" card, so he filed another inmate grievance.[11] That grievance was investigated, primarily to find out if the complaint had in fact been filed. DOC staff learned that it had indeed been filed and found the tracking information from the United States Postal Service ("USPS").[12] Despite reassuring Ryle that all was well with his complaint, Ryle pressed his grievance because he had not been delivered the green card.[13] The upshot of the grievance process was a promise that if/when DOC received the green card from the USPS, it would be turned over to him and the grievance file closed.[14]

Still not satisfied, Ryle amended his complaint in this Court to include the allegations concerning his non-receipt of the green return receipt card.[15] So we are clear: Ryle is not complaining that DOC lost or failed to mail his complaint. He is not complaining that his civil complaint was not filed with the Prothonotary. He is not complaining that DOC refused to give him the tracking information concerning the complaint – DOC did. His complaint is that he didn't get his copy of the green return receipt from the postal service.

---

[11] *Id.* ¶¶ 33, 35.
[12] *Id.*
[13] *Id.* ¶ 35.
[14] Amend. Compl. ¶¶ 35-41.
[15] *Id.* ¶¶ 29-44.

## STANDARD OF REVIEW

A party may move to dismiss under Rule 12(b)(6) for failure to state a claim on which relief can be granted.[16]  In considering a Rule 12(b)(6) motion, the Court (1) accepts as true all well-pleaded factual allegations in the complaint; (2) credits vague allegations if they give the opposing party notice of the claim; (3) draws all reasonable factual inferences in favor of the non-movant; and (4) denies dismissal if recovery on the claim is reasonably conceivable.[17]  Dismissal is inappropriate unless "under no reasonable interpretation of the facts alleged could the complaint state a claim for which relief might be granted."[18]

Delaware's motion to dismiss standard is "minimal."[19]  It asks "whether there is a possibility of recovery."[20]  The Court, however, need not "accept conclusory allegations unsupported by specific facts or … draw unreasonable inferences in

---

[16] Super. Ct. Civ. R. 12(b)(6).

[17] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Holdings LLC*, 27 A.3d 531, 535 (Del. 2011).

[18] *Unbound Partners Ltd. Partnership v. Invoy Holdings Inc.,* 251 A.3d 1016, 1023 (Del. Super. 2021) (internal quotation marks omitted).

[19] *Cent. Mortg. Co.,* 27 A.3d at 536.

[20] *Garfield v. BlackRock Mortg. Ventures, LLC,* 2019 WL 7168004, at *7 (Del. Ch. Dec. 20, 2019); *see Cent. Mortg. Co.,* 27 A.3d at 537 n.13 ("Our governing 'conceivability' standard is more akin to 'possibility,' while the federal 'plausibility' standard falls somewhere beyond mere 'possibility' but short of 'probability.'").

favor of the non-moving party."[21]    The Court may reject "every strained interpretation of the allegations proposed by the plaintiff."[22]

"The complaint generally defines the universe of facts that the trial court may consider in ruling on a Rule 12(b)(6) motion …."[23]  The Court may consider matters outside the complaint only if "the document is integral to a plaintiff's claim and incorporated into the complaint[.]"[24]  "[A] claim may be dismissed if allegations in the complaint or in the exhibits incorporated into the complaint effectively negate the claim as a matter of law."[25]

## ANALYSIS

### 1. The Failure by DOC to Tender a Copy of the Return Receipt Card is Not Actionable.

We know from the record that Ryle's inquiries concerning the return of the green card resulted in a grievance.[26]  The grievance was investigated by a DOC investigator, Defendant Veronica Tilghman, who reported on the grievance thusly:

> I spoke to Inmate Ryle about this grievance.  He stated that last time he had a return receipt with his legal mail it was within 10 days.  Now it has been over

---

[21] *Price v. E.I. DuPont de Nemours & Co.,* 26 A.3d 162, 166 (Del. 2011), *overruled on other grounds by Ramsey v. Ga. S. Univ. Advanced Dev. Ctr.,* 189 A.3d 1255, 1277 (Del. 2018).
[22] *Malpiede v. Townson,* 780 A.2d 1075, 1083 (Del. 2001).
[23] *In re Gen. Motors (Hughes) S'holder Litig.,* 897 A.2d 162, 168 (Del. 2006).
[24] *Windsor I, LLC v. CWCap. Asset Mgmt. LLC,* 238 A.3d 863, 873 (Del. 2020) (internal citations omitted).
[25] *Malpiede*, 780 A.2d at 1083.
[26] Amend. Compl. ¶ 33, Ex. 39, 40.

several weeks and he did not get his return receipt. He presented me USPS tracking stating the mail did arrive to its destination. But no return receipt. I explained to him the Post Office gives the Institution the return receipt. Once the Post Office delivers that to the Institution he will get it. I told him that he already has confirmation that that mail was delivered we are waiting for the return receipt from the Post Office. Inmate Ryle did not sign this grievance.[27]

After the grievance was denied, it appears Ryle appealed the denial of his grievance to the Warden,[28] who denied any relief and finally to Bureau Chief Shane Troxler,[29] who also denied relief, commenting that Ryle "received the tracking number from USPS that said legal mail arrived at the courthouse. Also, James T. Vaugh Correctional Center has no control over when the receipt of his certified mail will be delivered by the post office, but as soon as it is delivered, it will be given to the inmate Ryle."[30]

It is doubtful, to say the least, that a failure to return a green receipt card is actionable under any circumstances, or at least under these. There is not a scintilla of evidence that the card was or is being withheld by the DOC, but it rather appears that the card is somewhere within the bowels of the U.S. Postal System. There is no evidence DOC ever had it once it left with the civil complaint, which was duly filed and which we are duly considering in this opinion.

---

[27] *Id*. at Ex. 41.
[28] *Id*. at Ex. 43.
[29] *Id*. at Ex. 46.
[30] *Id*. at Ex. 45.

If the reader is wondering, at this point, what this is all about, well, so is the writer. The post office did not give DOC the copy of the return receipt. If the post office ever does, they will give it to Mr. Ryle. Meanwhile, his complaint has been filed. What are his damages? There are none.[31] This complaint is dismissed.

## 2. Defendants Tilghman, Dutton, Burley, Schaffer and Troxler are Dismissed as They Were Involved in the Adjudication of Ryle's Inmate Grievance and are Immune for Undertaking Quasi-judicial Activities.

Plaintiff's complaint identifies each of the above-named defendants and says "reasonable discovery will reveal Defendant['s] . . . tortious acts/inactions during Plaintiff's grievance procedures."[32] The remaining paragraphs of the Amended Complaint, however, merely recite that, when he had his problems with Outen and brought this to the attention of the Department's administration by way of an "inmate grievance" procedure, he did not receive the vindication he felt he deserved.[33] Each of the above-named defendants was involved in the inmate grievance procedure, as a hearing officer, investigator, or appeals reviewer. Their actions – or inactions –

---

[31] To the extent Mr. Ryle claims he is out the expense of paying for a return receipt request (allegedly $7.25, *see* Amend. Compl. ¶ 37) and he didn't get it, he can file that claim with the US Postal Service. There is no evidence that the DOC lost it or refused to give it to him, nor does he explain how his life would be different if he had received it in the ordinary course.

[32] Amend. Compl. ¶¶ 6-10.

[33] *Id*. ¶¶ 38-41.

clearly fall within the ambit of judicial, or quasi-judicial actions and were part of the mechanism of the DOC grievance procedure adjudicatory process.

The State Torts Immunity Act grants qualified immunity broadly to any state actor where:

> The act or omission complained of arose out of and in connection with the performance of an official duty requiring a determination of policy, the interpretation or enforcement of statutes, rules or regulations, the granting or withholding of publicly created or regulated entitlement or privilege or any other official duty involving the exercise of discretion on the part of the public officer, employee or member, or anyone over whom the public officer, employee or member shall have supervisory authority.[34]

The Amended Complaint alleges only that these actors did nothing other than investigate and adjudicate Ryle's inmate grievance. The only caveat to full immunity for state actors functioning as above is when their actions are in bad faith or are undertaken with willful or wanton negligence.[35] Plaintiff says only that they ruled against him. There is no argument or suggestion that they acted in bad faith or with willful or wanton negligence. They will be dismissed from this lawsuit.

### 3. Plaintiff Has Not Alleged That Defendant Outen Committed Actionable Slander Against Him

We come to then to the last remaining Defendant and the last remaining claim. This is that a particular guard, Outen, made comments to other inmates that Plaintiff

---

[34] 10 *Del. C.* § 4001(1).
[35] 10 *Del. C.* § 4001(2), (3).

feels slandered him. Just what these comments were become important, so they are worth consideration.

Mr. Ryle's Amended Complaint informs us that he had a prison job as a librarian.[36] He was seeking to further his education by applying for a paralegal certificate at an institution of higher learning via a correspondence program.[37] The Amended Complaint tells us that part of this programming required him to inquire into the process for becoming a licensed private investigator in the State of Delaware.[38] He wrote to the Delaware State Police, Professional License Section with just such an inquiry.[39]

Outen, we are told, has an assignment in the mail room.[40] Plaintiff recites that on a date a few weeks after writing to the State Police, Outen told Ryle that Ryle had received correspondence that appeared to come from a law enforcement agency and it had been returned to the sender.[41] According to the Amended Complaint, this statement was made in front of other inmates.[42] Moreover, the mailing was not in fact returned to the sender as Outen had said. Rather, another inmate who works in the mail room gave the correspondence from the State Police to Plaintiff in his jail

---

[36] Amend. Compl. ¶ 11.
[37] *Id.*
[38] *Id.* ¶ 12.
[39] *Id.* at Ex. 9a.
[40] *Id.* ¶ 18.
[41] *Id.* ¶ 13.
[42] Amend. Compl. ¶ 13.

cell.[43]  And a copy is included with the Amended Complaint, so we know the correspondence explains the procedure for obtaining a private detective's license in Delaware.[44]

Weeks later, according to Plaintiff, an inmate informed him that other inmates were concerned that Plaintiff was attempting to ingratiate himself with law enforcement in order to enhance his efforts at obtaining an early release from prison.[45]  In fact, says Plaintiff, he was merely fulfilling a requirement for his correspondence course.[46]

### A. The Law of Defamation

We begin with a consideration of the taxonomy of defamation.  "In shortest terms, libel is written defamation and slander is oral defamation."[47]  Libel, or written defamation, is actionable without proof of special damages, said to be due to the fact that, the defamation being written down for anyone to read at any time, damage can be presumed regardless whether the defamee can prove it.[48]  Slander, as spoken words, on the other hand, does not have the shelf life of libel, and damages for

---

[43]*Id.* ¶ 14.
[44] *Id.* ¶ 14, Ex. 9a-19a.
[45] *Id.* ¶ 17.
[46] *Id.* ¶ 12.
[47] *Spence v. Funk*, 396 A.2d 967, 970 (Del. 1978).
[48] *Id.* at 970-971.

slander are circumscribed.[49]   That is, the plaintiff must allege and prove "special damages" before reputational damages may be assessed.

There are, however, four types of slander that are considered "slander *per se*," meaning that like libel, damages are presumed and need not be proven with specificity: statements that "(1) malign one in a trade, business or profession, (2) impute a crime, (3) imply that one has a loathsome disease, or (4) impute the unchastity to a woman."[50]

Of these four possibilities, Plaintiff chooses to argue option number one – that Outen maligned Plaintiff in his "trade, business or profession."   But Plaintiff's "business" is either 1) being an inmate in a state penal institution or 2) being a prison law librarian.   Neither of these possibilities has anything whatever to do with notification that he's received mail from a law enforcement agency that is being returned.   So the Court must reject the proposition that the Plaintiff is excused from alleging or proving special damages.

A final variant of defamation finds its way into this complaint: false light invasion of privacy.  This tort has been defined as "giving publicity to something that places the plaintiff in a false light before the public, the false light being highly

---

[49] *Id.* at 970.
[50] *Spence,* 396 A.2d at 970 (*citing* Prosser, Law of Torts, § 112, pp. 754-760 (4th Ed., 1971); Restatement (Second) of Torts § 570 (Am. Law Inst. 1977)).

offensive to a reasonable person."[51]  The same rules of defamation apply: "special damages [must] be pleaded and proved by the plaintiff in any case in which the defamatory words are not actionable *per se*."[52]

## B.  Plaintiff has Not Alleged Special Damages

All of this is a prefatory way of getting to the point: Plaintiff is not in that category of Plaintiffs that is exempt from pleading and proving damages because they are presumed.  Rather, he must plead and prove special damages, and he has not done so.  "Generally, 'oral defamation is not actionable without special damages.'"[53]  Specifically, "[s]pecial harm is the loss of something having economic or pecuniary value."[54]  He may claim generally that his "reputation" has suffered, but that alone does not suffice in the absence of pleading and proving special damages independent of any reputational damage.

The Plaintiff has not pled that he lost his prison job as a librarian, or that he suffered any other pecuniary loss as a result of this alleged slander.  In the absence

---

[51] *Wyshock v. Malekzadeh*, 1992 WL 148002, at \*2 (Del. Super. June 10, 1992) (internal citations omitted).

[52] Restatement (Second) of Torts § 652E cmt. e (Am. Law Inst. 1977).

[53] *Preston Hollow Capital LLC v. Nuveen LLC*, 2022 WL 2276599, at \*3 (Del. Super. June 14, 2022) (*quoting Spence*, 396 A.2d at 970-71).

[54] Preston Hollow Capital LLC, 2022 WL 2276599, at \*3 (quoting Restatement (Second) of Torts § 621 cmt. a (Am. Law Inst. 1977); *see* Restatement (Second) of Torts § 575 cmt. b (Am. Law Inst. 1977).

of allegations or evidence of actual damage, Plaintiff's allegations are insufficient to sustain the complaint.

If Plaintiff's failure to allege specific damage was not evident from the facts recited above, his "Prayer for Relief" is equally revealing. He asks for an injunction to 1) ban/suspend Outen from the mail room, 2) institute a DOC policy to ensure inmate mail is delivered directly to the inmate, 3) provide inmates with a receipt of purchase for all mail, plus nominal, compensatory, and punitive damages. His only specific requests are for an injunction, which is not a remedy available in Superior Court.[55] There is no prayer for specific compensation, because he has not suffered any specific damage.

## CONCLUSION

For all of the foregoing reasons, the Plaintiff's Amended Complaint is **DISMISSED.**

**IT IS SO ORDERED.**

/s/ Charles E. Butler
Charles E. Butler, Resident Judge

---

[55] *National Industries Group (Holding) v. Carlyle Inv. Management L.L.C.*, 67 A.3d 373, 382 (Del. 2013) (The Court of Chancery has exclusive jurisdiction over matters seeking injunctive relief.) (internal citations omitted); *see* 10 *Del. C.* § 341.